IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

United States District Court
Southern District of Texas
FILED

⛌ MAR 0 2 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| GLORIA DE LOS ANGELES TREVINO RUIZ a.k.a "GLORIA TREVI", | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO._____ |
| WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., | § § § | |
| Defendant. | § | |

**M-05-066**

---

### PLAINTIFF'S ORIGINAL COMPLAINT &
### REQUEST FOR DECLARATORY JUDGMENT

---

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, GLORIA DE LOS ANGELES TREVINO RUIZ, a.k.a. "GLORIA TREVI", (hereinafter referred to as "Plaintiff") complaining of WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. (hereinafter referred to as "WORLD"), and in support thereof would respectfully show the following:

### I.
### Parties

1 1    Plaintiff, GLORIA DE LOS ANGELES TREVINO RUIZ, is an individual, that is a citizen of the country of Mexico

1.2    Defendant, WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., is a corporation that is incorporated under the laws of the State of New Jersey. Defendant has its principal place of business in the State of Florida. Defendant does not have a registered agent for service of process in the State of Texas. Service of process on defendant may be made according to Rule 4 of the Federal Rules of Civil Procedure by delivering a copy of the summons and of

#724530

this complaint to John Regna, an officer and chairman for WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. Defendant WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., by and through its chairman John Regna and its agents has engaged in business in the State of Texas.

1.3    GLORIA DE LOS ANGELES TREVINO RUIZ is the plaintiff in this suit. WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. is the defendant in this suit, and to plaintiff's knowledge, there are no other potential parties known at this time who may have a claim or interest that would be affected by the declaration.

## II.
## Jurisdiction

2.1    The Court has diversity jurisdiction over the lawsuit under 28 U.S.C. § 1332 (a)(2) because the suit is between GLORIA DE LOS ANGELES TREVINO RUIZ, a citizen of a foreign state (Mexico) and WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., a New Jersey Corporation with its principal place of business being in the State of Florida. Furthermore, the amount of controversy exceeds $75,000, excluding interest and costs.

## DOCUMENT, EXHIBIT "1", IS NULL AND VOID
## DUE TO FRAUDULENT INDUCEMENT TO SIGN

The purported legal document titled "Representation Agreement" is null and void as a matter of law because the plaintiff's signature was obtained as a result of a fraudulent inducement to sign. Therefore, for the reasons stated below, the entire documents, including any and all provisions contained therein, are void as a matter of law.

## III.
## Facts

3.1    Plaintiff brings this claim for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201, 2202.

3.2     On or about October 27, 2004, plaintiff GLORIA DE LOS ANGELES TREVINO RUIZ and defendant WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. attempted to enter into a "Representation Agreement" as evidenced by the attached *Exhibit "1."* Such document was signed in Brownsville, Texas.  Plaintiff is a Mexican citizen who does not read or speak the English language proficiently.  GLORIA DE LOS ANGELES TREVINO RUIZ, plaintiff, demanded as a condition precedent to entering into any agreement with the defendant, that such agreement would have to be translated from the English language into Spanish before their agreement became valid and enforceable.  To date, the defendant has failed to produce a Spanish translation of the agreement pursuant to Section 14 (h) of the document titled "Representation Agreement" and consequently, such Spanish translation has not been signed by both parties.  Section 14 (h) of the document states: *"This Contract shall be translated into Spanish by a certified translator in Mexico and both the English and Spanish translation shall be executed by both parties hereto…"*

3.3     GLORIA DE LOS ANGELES TREVINO RUIZ does not have English language proficiency and John Regna, chairman of WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., was aware of the plaintiff's language limitations.    WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. through its chairman John Regna on or about October 9, 2004 in the restaurant of the Doral Spa Hotel in Miami, Florida, where the contract was initially negotiated, through fraud, misrepresentations and omissions, tricked plaintiff, Gloria Trevi, into signing a legal document in English which did not represent the agreement between the parties.  Specifically, John Regna represented and assured plaintiff that in order to be valid, as a condition precedent, the legal document would be translated into Spanish for her approval and the contract required both parties to read, understand and execute both

3

versions of the contract.   The above representations by WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. were fraudulent because defendant intended plaintiff to rely on such representations in order to sign the legal document.

3.4     On or about October 27, 2004 at the Law Offices of Robert J. Lerma, attorney Robert J. Lerma, agent for defendant WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., stated to plaintiff and her brother, Ramiro Treviño, that the contract in English would not be a valid and enforceable contract until the contract was translated into Spanish and executed by both parties.   The above representations by WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. were fraudulent because defendant intended plaintiff to rely on such representations in order to sign the legal document. *See attached Exhibit "1."*

3.5     On or about October 18, 2004, at the Law Offices of Manrique Moheno located in Mexico City, Mexico, John Regna, on behalf of WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC., fraudulently misrepresented various material terms of the contract, including but not limited to, (1) the Spanish translation of the contract, section 14 (h); (2) by representing that the contract would not be valid and enforceable until translated into Spanish and executed by both parties, the Defendant induced Plaintiff to sign a legal document which contained a forum venue clause in section 14 (c); and (3) John Regna misrepresented the plaintiff's ability to terminate the alleged agreement pursuant to the one year expiration of the Initial Marketing Goals Period, section 1 (c), because John Regna on October 18, 2004 stated to plaintiff that at the end of the first year of the contract, the plaintiff would be entitled to terminate the agreement if she was not pleased or not in agreement with the work performed by defendant WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC..   The above representations by WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. were

4

fraudulent because they were not true and defendant intended plaintiff to rely on such representations in order to sign the legal document.

## IV.
## Conditions Precedent

4.1    The performance or occurrence of a specific condition precedent to the contract has not yet occurred.  Specifically, the agreement between the parties required that a Spanish translation of the agreement, Exhibit "1," be provided to the plaintiff for her approval and that such Spanish translation be executed by both parties.  Plaintiff denies the performance or occurrence of the required precedent condition.

## V.
## Declaratory Judgment

5.1    GLORIA DE LOS ANGELES TREVINO RUIZ, plaintiff, seeks the aid of this Court to judicially establish through a declaratory judgment that the document titled "Representation Agreement" signed on October 28, 2004 in Brownsville, Texas is not a valid enforceable contract, and consequently, defendant WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC. is not entitled to receive any future compensation.

5.2    Under the Declaratory Judgment Act, plaintiff asks this Court to declare the rights and responsibilities of the parties to the alleged contract regarding the following issues: (1) the validity and enforceability of the alleged legal document as to GLORIA DE LOS ANGELES TREVINO RUIZ and WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC.; (2) the enforceability of the venue, choice of law and jurisdiction provisions in the contract; (3) the enforceability of the clause requiring that the contract be translated into Spanish and signed by both parties in order to have a valid, enforceable and binding contract; and (4) GLORIA DE LOS ANGELES TREVINO RUIZ right to terminate the contract.

5

5.3    The declarative relief is necessary and Declaratory Judgments are well suited for resolving contract disputes.  Therefore, in the interest of justice, GLORIA DE LOS ANGELES TREVINO RUIZ seeks this declaratory relief in order to focus specifically on the parties' dispute and save judicial resources by avoiding full blown contractual litigation.

## VI.
## Prayer

For these reasons, plaintiff seeks judicial determination of the following:

1.    That there is NOT a valid and enforceable contract between GLORIA DE LOS ANGELES TREVINO RUIZ and WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC.;

2.    That the venue, jurisdiction and choice of law provisions in the contract are not enforceable;

3.    A Judicial determination regarding the enforceability of the clause requiring that the contract be translated into Spanish and signed by both parties in order to have a valid, enforceable and binding contract;

4.    That GLORIA DE LOS ANGELES TREVINO RUIZ has a right to terminate the alleged contract;

5.    Reasonable attorney fees;

6.    Costs of Court; and

7.    All other relief the court deems appropriate.

Respectfully submitted,

By: _____
         OSCAR R. ALVAREZ
         State Bar No. 24036133
**LAW OFFICE OF RAMON GARCIA, P.C.**
         222 W. University Drive.
         Edinburg, Texas 78539

6

Tel.    (956) 383-7441
Fax.   (956) 381-0825

**ATTORNEY IN CHARGE FOR PLAINTIFF,
GLORIA DE LOS ANGELES TREVINO RUIZ**

# Exhibit "1"

## REPRESENTATION AGREEMENT

THIS AGREEMENT is made this $\underline{27^{7th}}$ day of October, 2004, to be effective as of October 25, 2004, by and between **WORLD ENTERTAINMENT ASSOCIATES OF AMERICA, INC.**, a New Jersey corporation ("World"), whose business address is 8815 Conroy Windermere Road, Orlando, Florida 32835 USA, and whose fax number is (407) 876-3191, and **GLORIA DE LOS ANGELES TREVIÑO RUIZ** ("Artist"), whose principle business address is in Ciudad de Mexico DF, Mexico and whose phone is 011-525-53-110-5209

### RECITALS

WHEREAS, World is in the business of managing and representing major entertainment artists throughout the world;

WHEREAS, Artist wishes to retain the services of World to manage and represent Artist pursuant to the terms and conditions set forth herein.

IN CONSIDERATION OF the mutual covenants and promises hereinafter contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, World and Artist hereby agree as follows:

1. **Term:**

   (a)    The term of this Agreement (hereinafter referred to as the "Term") shall consist of an initial period of three (3) years commencing on the date hereof (the "First Contract Period") plus the additional Contract periods, if any, by which the Term may be extended by Artist's exercise of one or more of the following options:

   (b)    The term of this Contract may be extended for four (4) consecutive one (1) year periods (the "Second, Third, Fourth and Fifth Contract Periods", respectively), at the Artist's sole discretion.   Each such option shall be deemed to be exercised by Artist by providing World with written notice that Artist is electing to exercise such option to extend this Agreement at least sixty (60) days prior to the date that the then current Contract Period would otherwise

at least sixty (60) da,  ,rior to the date that the then current Cont     Period would otherwise
expire.



(c)     No later than sixty (60) days from the date of execution of this Contract by both parties, World shall prepare, and the Artist shall approve, a written statement (the "Initial Marketing Goals Statement"), to be attached hereto and incorporated herein as Exhibit "A" hereof, of marketing plan goals related to the Artist for the twelve-month period starting from the date of Artist's approval of the Initial Marketing Goals Statement (the "Initial Marketing Goals Period"). No later than the end of the Initial Marketing Goals Period, and of each successive twelve-month Marketing Goals Period thereafter through the Term hereof, and any extensions or renewals thereof, World shall prepare, and the Artist shall approve, a revised and updated Marketing Goals Statement setting forth World's marketing goals for the following twelve-month Marketing Goals Period. At the end of the Initial Marketing Goals Period, and of any subsequent marketing goals period, Artist shall be entitled, at Artist's sole discretion, to terminate this Contract if World has not taken reasonable action towards accomplishing a substantial portion of the goals set forth in the then-applicable Marketing Goals Statement.

**2. Engagement:**

Artist hereby engages World, during the Term hereof, as Artist's exclusive personal representative and advisor, throughout the world and universe, with respect to all of Artist's activities throughout the Entertainment Industry (as defined below), and World hereby accepts such engagement and all the obligations and duties contained. World hereby agrees that John Regna shall devote at least seventy-five percent (75.00%) of his working time to matters related to the Artist. Notwithstanding the foregoing, however, Artist shall be entitled to hire the Road Manager of her choice.

**3. Scope of Engagement:**

(a) Except as specifically set forth in Section (3)(d) below, World's scope of engagement shall be as follows: World shall confer with, counsel, and advise Artist in all matters pertaining to Artist's career in the Entertainment Industry including, without limitation, the following: (i) the selection of literary, artistic and musical material; (ii) all matters pertaining to



2



publicity, public relations and advertising; (iii) general practices in the Entertainment Industry regarding such matters as World has knowledge, such as compensation and privileges extended for similar artistic services; (iv) the selection of and negotiating with theatrical booking and similar agencies and other third parties that seek and procure employment and engagements for Artist; and (v) the selection of, and negotiation with, any potential users of Artist's talents  World shall receive copies of all agreements entered into by Artist during the Term of this Agreement promptly following the full execution thereof and copies of any correspondence, memoranda or notes relevant thereto.

(b)  Artist shall promptly advise World of all offers of employment, and of all inquiries concerning Artist's career, so that World may determine and advise Artist whether same are compatible with Artist's career.

(c) Artist hereby acknowledges that World is not solely a Manager, a Booking Agent or any singularly defined type of representative, that World has not guaranteed specific employment or engagements for Artist, and that World shall not be obligated to procure or to attempt to procure specific employment or specific engagements for Artist hereunder.  Artist shall be solely responsible for payment of all customary and approved commissions to booking agencies over and above those of World's compensation.  For purposes of this Contract, World's duties as "Manager" shall encompass the general architecture of the Artist's career and World's duties as "Booking Agent" shall encompass World's efforts at obtaining specific engagements for the Artist.  World hereby acknowledges and agrees that its compensation hereunder is for its services both as Manager and Booking Agent.  In order to avoid any appearance of a conflict of interest, World agrees to receive one compensation based upon the customary compensation for Managers at the rate set forth herein and shall not charge any additional amount for its services as a Booking Agent.





(d) Notwithstanding the foregoing, the following matters shall remain in the Artist's sole and exclusive control and World shall have no responsibility therefore nor right to compensation therefrom unless specifically agreed to by the Artist or provided expressly herein:

(i)    Artist activities as caricaturist, comic designer, painter, any type of plastic arts, or art designs, and the commercial exploitation of the any of the foregoing, unless any of the foregoing shall involve the use or depiction of Artist's image. Notwithstanding the foregoing, however, Artist shall not use or depict Artist's image in such a manner as to be contrary with Artist's public image.

(ii)    Any matter or activity referring or relating to Artist's personal life in any form and in any territory, for books, movies, theatrical plays or similar media. However, as to any such matters, Artist hereby grants to World a first option to represent Artist in any negotiations involving the same, and World shall thereupon be entitled to compensation as if such matters were a part of this Contract.

(iii)    As to any public performance revenues wherein Artist is credited as either artist or composer in any territory, any compensation to World shall be limited to Artist's net income derived from which directly relate to any of the Artist's songs or albums to be written or published subsequent to the date of this Contract (the "Future Catalogue"), including, without limitation, those as may be set forth in Exhibit "B" to be attached hereto and incorporated herein.

(iv)    Except as set forth in this subsection (3)(d)(iv), World shall not be entitled to compensation from Artist's gross income derived from music publishing and songwriting related to Artist's musical catalogue existing as of the date of this Contract (the "Past Catalogue"). Artists shall retain sole and exclusive control over any publishing deals related to the Past Catalogue. However, in the event World, with Artist's prior consent, successfully renegotiates Artist's compensation for the Past Catalogue, or any portion thereof, World shall be entitle to its compensation based upon any increase in compensation to the Artist for said Past



4



Catalogue, or any portion thereof, resulting from World's efforts. As to any of the Artist's Future Catalogue, World shall be entitled to its compensation based upon the Artist's net income received from said Future Catalogue once all advances have been recouped by the publisher thereof. Artist shall have primary decision-making power for music publishing deals with Edimusa publishing. Artist agrees to consult with Manager prior to making final decision. A list of the Artist's Past Catalogue published by Edimusa shall be attached hereto and incorporated herein as Exhibit "D" subsequent to the execution of this Agreement.

(v)     Artist shall have the sole and exclusive right to affiliate with any Public Performance Society of Artist's choice.

(vi)    World shall not be entitled to compensation derived from any BMG Music Entertainment ("BMG") Artistic Royalties related to the Artist's Past Catalogue as set forth in Exhibit "E" to be attached hereto. As to any such BMG Royalties to be derived from the Artist's Future Catalogue, World shall be entitled to its compensation based upon the Artist's net income received from said Future Catalogue once all advances have been recouped by BMG

(vii)   Any non-artistic business dealings of the Artist, such as damages awarded in any lawsuits (other than suits involving matters to which World is entitled to compensation under this Contract) or investments, shall be excluded from the terms of this Contract.

4.      **Attorney-In-Fact:**

(a) Artist hereby authorizes and appoints World as Artist's true and lawful business agent and attorney-in-fact for the limited purposes of:

(i) executing for Artist and in Artist's name and on behalf of Artist customary agreements, documents and contracts for Artist's services and talents solely in connection with so-called "one-nighters", no more than three (3) days in a row. In each instance, World shall provide Artist with copies of any agreements so executed relating to such "one-



5



nighters" immediately following the execution of each.   World shall obtain the prior consent of Artist for any successive performances of more than three (3) days in a row.

(ii) approving and permitting the use of Artist's name (actual and professional), photograph, likeness, sound effects, caricature and the like which have been previously approved by Artist for customary entertainment industry purposes of advertising of any and all Artist's products and services contemplating hereunder.   Notwithstanding the foregoing, Artist shall have and maintain throughout the Term hereof, the absolute right to approve all advertising, promotion and publicity connected with Artist's endorsement of and/or commercial tie-ins to any advertising for goods, services, facilities and properties other than those which are primarily geared to the sale of Artist's recorded and live performances.   Except in the instances of tobacco, alcohol, drugs and other products that might tend to place Artist in a bad light, Artist's written consent shall not be unreasonably withheld or delayed.   Artist at all times shall own and have all the intellectual and commercial rights for her artistic name and image, any kind of copyright or trademark registration in any country, which will always be under the name of Gloria de los Angeles Treviño Ruiz, aka "Gloria Trevi".   Any manner of exclusive license of the foregoing issues shall be approved directly by Artist.

(iii) Subject to Artist's sole discretion, engaging, discharging and directing for Artist, and in Artist's name, public relations firms, talent agencies and representatives, attorneys, accountants and other persons, firms and corporations as reasonably required in connection with Artist's business and financial affairs in the entertainment industry. All such persons, firms and entities shall be required to hold such professional licenses as may be legally required by the jurisdiction(s) in which said parties may do business;

(iv) With Artist's prior written consent, causing appropriate third parties to audit and examine books and records of parties with whom Artist has contractual or other rights to audit and examine books and records.





6

## 5. Compensation and Expenses:

Subject to the limitations set forth in Section (3)(d) above, World shall be entitled to compensation for its services hereunder as follows:

(a) In consideration of the services rendered by World, Artist shall pay to World, as and when received by Artist or applied in Artist's behalf, a sum equivalent to Twenty Percent (20.00%) of Artist's "Gross Compensation", as hereinafter defined, (such percentage interest hereinafter referred to as the "Commission"), except that as to any endorsement of, or other engagements related to, the use of the Artist's name, image or voice in the marketing or branding of a product or service, said consideration shall be in the amount of Twenty Percent (20.00%) of Artist's "Gross Compensation", as hereinafter defined. Artist acknowledges and agrees that in connection with any bookings obtained by World for Artist, World customarily obtains a deposit of fifty percent (50%) of the total compensation to be paid and is entitled to deduct from said deposit its commissions related thereto, then forwards the balance of the compensation within one week after the performance, with the balance of the deposit to be held until disbursement in World's account designated as World Entertainment Special Artist Holding Account (the "Holding Account"). World shall provide Artist with a monthly statement showing all monies in the Holding Account related to Artist and shall provide detailed information to Artist as to any disbursements therefrom.

(b) The Commission shall be paid to World as and when said Gross Compensation is received by Artist's accountant/business representative (the "Accountant") without limitation of time, directly or indirectly, or by any person, firm or corporation on Artist's behalf pursuant to:

(i) any and all contracts, including, without limitation, television, film and theatrical contracts and exclusivities, engagements and commitments from the date of execution of this Agreement forward;



7



(ii) any and all contracts, engagements and commitments entered into or substantially negotiated (i.e. material terms agreed to even though the actual written agreement embodying the same may have been executed post-Term) during the Term hereof;

(iii) any and all extensions, additions, substitutions, renewals, replacements, modifications and amendments of all such contracts, engagements, and commitments referred to in (i) and (ii) above, but excluding all improvements which may be negotiated after the term;

(iv) World shall not be entitled to any commission monies advanced to Artist or utilized by Artist as recording, radio or video production costs including, but not limited to third party payments (including but not limited to producers, directors, mixers, engineers and session musicians and vocalists), tour support (including the costs of opening acts, sound and lighting), independent promotion payments made to the A.F.of M., AFTRA or similar unions and guilds outside of the USA, bad debts and taxes, including but not limited to sales, VAT or use taxes

(v) any and all judgments, awards, settlements, payments, damages and proceeds relating to any suits, claims, actions, proceedings or arbitration proceedings arising out of alleged breach, non-performance or infringement by others of any contracts, engagements, commitments, other agreements or rights referred to in (i), (ii) and (iii) above, regardless of when entered into, when performed and when effective. Any monies due to World resulting from this subsection (v) shall be computed after first deducting attorneys' fees, legal cost and disbursements.

(vi) World's Commission on all of Artist's Gross Income derived from music publishing and songwriting shall be calculated excluding the costs of collecting such income, amounts paid to or retained by other songwriters and co-publishers, except as provided in Section (3)(d)(iv) above.





(vii) In the event Artist is legally required to re-pay or credit to any third party, any monies which have been taken by Artist as an advance against then future or further royalties or other incomes and World has received or been credited for Commission hereunder, World agrees to re-pay to such third party its proportionate share thereof in a percentage amount equal to its Commission.

(viii)   All Commission payable to World in connection with the foregoing, to be paid within one (1) year from the date of the expiration or termination (other that termination for cause occurring due to World's material, uncured breach hereof) hereof, shall be calculated and paid at the rate of Ten Percent (10.00%) of Artist's Gross Compensation.

(c) Artist agrees that Artist shall pay all Artist's expenses which may arise in connection with Artist's activities in the Entertainment Industry as set forth in the Statement of Agreed Expenses to be attached hereto and to be incorporated herein as Exhibit "C" hereof, including, but not limited to, the cost of material, equipment, facilities, transportation, lodging and living expenses, costumes, make-up, accounting and legal fees, and World shall not have any liability whatsoever in such connection. World shall not be required to travel to meet with Artist at any particular place; however, when any employee or representative of World travels on Artist's behalf, at Artist's request, it shall be at Artist's sole expense. Artist agrees to instruct Artist's accountant (the appointment of whom shall be mutually approved by both Artist and World) to deduct from Gross Compensation all reasonable, out-of-pocket expenses which World advances or incurs on Artist's behalf hereunder as set forth in Exhibit "C" hereto (the "Agreed Expenses") including, but not limited to, the cost of all long distance telephone calls, transportation undertaken by World at Artist's request or with Artist's consent, and all lodging and living expenses connected therewith. World shall have the right to deduct all Agreed Expenses incurred by World on Artist's behalf whenever Artist's business representative receives any Gross Compensation. World shall not incur any single expense in excess of Five Hundred Dollars ($500 USD) without Artist's prior written consent, and World shall not incur aggregate



9



monthly expenses in excess of One Thousand Dollars ($1,000) without Artist's prior written consent. Such Agreed Expenses shall not however include any of World's overhead or the salaries of World's employees. Agreed Expenses, which are attributable to services in common by World for both Artist and third parties, shall be pro-rated by World and shared by and between Artist and such third parties. As to any additional expenses incurred by World which are not included in the Agreed Expenses Statement, such expenses shall be reviewed by accountants for both World and the Artist at the end of each yearly anniversary hereof and compensation therefore shall be determined at that time

(d) All Gross Compensation earned by Artist and subject to the commission hereunder shall be paid directly to the Accountant. Artist shall notify and irrevocably direct any and all third parties to pay all Gross Compensation directly to the Accountant. The Accountant shall pay the any and all commission and any and all Expenses from Artist's Gross Compensation pursuant to Paragraph 5 and 6 hereof.

6.   **Accounting:**

(a)   Commencing November 25, 2004, and continuing on or before the twenty-fifth (25ᵗʰ) day of each consecutive calendar month during the Term of this Agreement, the Accountant shall prepare and deliver to World a monthly written accounting statement setting forth all gross monies received by Artist or on Artist's behalf hereunder during the proceeding calendar month, and specifying the source or sources thereof. Each such accounting statement shall be accompanied by payment of the net sum thereof shown to be due to World for such accounting period pursuant to Paragraph 5 and 6 hereof. Reimbursement of all permissible expenses incurred by World under Paragraph 5(c) above, shall be paid to World not later than thirty (30) days from the end of each calendar month during which the expenses are incurred by World.



(b)  In the event that Artist or World or any party on Artist or World's behalf (other than the Accountant), shall receive any Gross Compensation hereunder, Artist or World, as the case may be, shall immediately remit all such sums directly to the Accountant.

(c)  Artist shall have ninety (90) days from the date of this Contract to organize Artist's own company and to appoint an accounting firm to handle Artist's business.  Upon creation of Artist's company, said company shall execute an agreement to be bound by the terms of this Contract and Artist shall assign Artist's rights hereunder to said company as a "loan-out company" as set forth in Section (13) hereof.

### 7.  Inspection and Audit:

Artist agrees that World and World's employees and authorized representatives may inspect and audit Artist's books and records, including those maintained by the Accountant, solely to ascertain the amounts due World, and World agrees that Artist and Artist's authorized representatives may inspect and audit those portions of World's books and records which concern Artist  World agrees to permit Artist and Artist's authorized representatives to inspect and audit World's documents, agreements and accountings related exclusively to matters managed by World related to the Artist.  The aforementioned audits and/or inspections, if any, shall be conducted upon fifteen (15) days advance written notice to the party to be audited or inspected, and shall be no more frequent than once a year.  Books and records as used herein shall include ledgers, journals, receipt books, checks and all other records concerning financial matters.  All such audits shall be conducted (to the extent possible) on consecutive days and in a manner designed to minimize the disruption of the audited party's regular business activities.  All audits shall be undertaken at the sole cost and expense of the auditing party unless and in the event the audit indicates an underpayment in excess of five percent (5%) which is not less than $1,000 ("Material Discrepancy").  In the event a Material Discrepancy is discovered as a result of audit, upon written demand therefore, the audited party shall, in addition to paying the amount of underpayment, shall pay to the auditing party its reasonable professional auditing fees and out-of-



11



pocket expenses (excluding travel and lodging) incurred in the conduct of such audit. The failure to make such payment within thirty (30) business days of the date of demand therefore shall be deemed to be a material breach of this provision and shall give the aggrieved party the right, among others, to immediately terminate their continuing obligations to perform under this Agreement without prejudice to such party's other continuing rights hereunder.

8. **Package Proposals:**

During the Term of this Agreement, acting alone or in association with others, World may package an entertainment program in which Artist is employed as an artist, or World may act as the entrepreneur or promoter of an entertainment program in which Artist is employed by World who may engage Artist in connection with film, television or theatrical productions or the production of phonorecords. Such activity on World's part shall not be deemed to be in breach of this Agreement or of World's obligations and duties to the Artist. World shall not be entitled to the Commission in connection with compensation derived by Artist from any employment or agreement where under Artist is employed by the firm, person or corporation represented by World as the package agent for the entertainment program in which Artist is so engaged; and World shall not be entitled to the Commission in connection with compensation derived by Artist from sale, licenses or grant of any rights to World or any person, firm or corporation owned by World. In each and every instance World proposes to package as aforesaid, such packaging activity shall be subject to the reasonable consent of the Artist, who shall in each instance be advised by independent legal counsel as to the advisability of the same. World shall thereupon, inter alia, disclose to Artist the financial structure of such proposed package in order to determine the fairness of the arrangement insofar as Artist is concerned.

9. **Independent Contractor:**

Artist hereby acknowledges that, other than when exercising its Power of Attorney as set forth in Section (4) above, World's position hereunder shall be that of an independent contractor. World's services are not exclusive to Artist and World shall be permitted to perform the same or

12

similar services for other artists or persons during the Term of this Agreement. World shall be permitted to devote such time and efforts to other business activities as World may deem necessary or desirable in World's sole discretion consistent with World's obligations and duties to Artist hereunder.

10. **Representations, Warranties and Indemnity:**

(a)   Artist hereby warrants and represents that:

(i)   Artist has the right to make and enter into this Agreement and to grant all of the rights herein granted to World, and that Artist is not now under contract to any other personal representative;

(ii)   Artist will at all reasonable times during the Term be devoted to Artist's professional career in the Entertainment Industry and do all the things reasonably necessary to promote Artist's career and earnings therefrom;

(iii) Artist shall not publicly appear or perform for anyone, directly or indirectly, except in normal consultation with World, as Artist's personal representative in the entertainment industry, and under World's direction, without World's prior written consent; and

(iv) No act or omission by Artist hereunder will knowingly violate any right or interest of any person, firm or corporation or knowingly subject World to any liability or claim of liability to any person, firm, or corporation.

(b)   Artist and World shall each at all times defend, indemnity and hold the other harmless from and against any and all demands, claims, damages, liabilities, costs and expenses, including legal expenses and reasonable counsel fees (including, without limitation, appellate and bankruptcy fees and costs), arising out of any alleged breach or breach by the indemnifying party of any warranty representation or agreement made by the indemnifying party ("Indemnitor") herein, or pertaining to any other act, error or omission allegedly committed or omitted by the Indemnitor or any person or entity allegedly acting on the Indemnitor's behalf or under the Indemnitor's direction or control. The Indemnitor will reimburse the other party



13



("Indemnitee"), on appropriate written demand, for any payment made at any time after the date hereof in respect of any liability or claim in respect of which Indemnitee is entitled to be indemnified. In the event indemnitor fails to so reimburse indemnitee, the indemnitee may deduct such payments from any and all Gross Compensation received by either party hereunder and such indemnitee may instruct third party payers in writing, accordingly providing such third party with a copy of this provision if necessary.

11.   **Specific Performance and Termination of Agreement:**

(a)(i)   Artist acknowledges and agrees that World's right to represent Artist as Artist's sole and exclusive personal representative, and Artist's obligation to solely and exclusively use World in such capacity, are unique, irreplaceable and extraordinary rights and that any breach or threatened breach by Artist thereof shall be material and may cause World immediate and irreparable harm to its reputation and goodwill in the Entertainment Industry, and other immediate irreparable harm which cannot be adequately compensated for by a money judgment. Accordingly, Artist agrees that, in addition to all other forms of relief and all other remedies which may be available to World in the event of any such breach or threatened by Artist, World shall be entitled to seek, if available, specific performance, an injunction or other equitable relief against Artist to enforce World's exclusive rights hereunder.

(ii)   World acknowledges and agrees that Artist's right to be represented by World as Artist's sole and exclusive personal representative, are unique, irreplaceable and extraordinary rights and that any breach or threatened breach by World thereof shall be material and may cause Artist immediate and irreparable harm to Artist's reputation and goodwill in the Entertainment Industry, and other immediate irreparable harm which cannot be adequately compensated for by a money judgment. Accordingly, World agrees that, in addition to all other




14

forms of relief and all other remedies which may be available to Artist in the event of any such breach or threatened by World, Artist shall be entitled to seek, if available, specific performance, an injunction or other equitable relief against World to enforce Artist's exclusive rights hereunder.

(b)     If at any time Artist or World fails, for a period in excess of sixty (60) days (the "Sixty Day Period") during the Term hereof, as the same may be extended, for any reason whatsoever, other than Artist's death or substantial disability, to fulfill or perform any obligation assumed by either party hereunder, or should Artist or World engage any other person or entity for any services which Artist or World is obligated to perform exclusively on Artist's behalf hereunder, then, without limiting either party's rights, Artist or World (as the case may be) shall have the right, exercisable at any time after the Sixty Day Period by written notice to the other party, to (in the case of the World) extend the expiration date of the then current period of the Term, or, in the case of the Artist, to terminate this Agreement. In the case of the World only, such extension shall continue until Artist has fully cured the failure or engagement or terminated any engagement which is in violation of this Agreement, and the then current period of the Term shall be extended for a period of time equal to the duration of any such failure or engagement. Artist acknowledges that World's exercise of its rights hereunder shall not in any way affect or diminish any available right seek to equitable relief under Paragraph 11 (a) hereof.

(c)     In the event that John Regna shall terminate his relationship with World at any time during the Term hereof, or any renewals or extensions of said Term, Artist shall have the sole and exclusive option to cancel this Contract upon written notice to World and the parties' accountants shall thereupon prepare a final accounting as to any monies due to the parties at that time. However, World shall remain entitled to any compensation from income to the Artist derived from World's efforts prior to the departure of John Regna as provided herein.



15

12. **Definitions:**

As used in this Agreement, the following terms shall have the meanings set forth below:

(a)  "Entertainment Industry" – Subject to the specific exclusions set forth in Section (3)(d) above, said term includes, without limitation, all services and activities in such fields of endeavor as film, television and phonograph records including. but not limited to, recording and productions, transcriptions, musical and/or dramatic performances, singing, radio, television, motion pictures, home video, electronic transmissions via the so-called "Internet" or worldwide web, interactive computer game technologies, music, personal appearances, concerts, road shows, tours, café and cabaret performing, hotel, restaurant and private function performing, literary and theatrical engagements, radio and television commercials, commercial merchandising endorsements and tie-ins and for any and all other media of entertainment for which Artist may be or become qualified; and the sale, lease or other disposition of musical, literary, dramatic, or other artistic material which Artist may create, compose, write or collaborate, directly or indirect, in whole or in part, in any and all fields; and any act, unit or package show of which Artist may be the owner or part owner, directly or indirectly.  Any activity specifically listed as excluded under Section (3)(d) above shall not be considered as being a part of the definition of "Entertainment Industry" for the purposes of this Contract

(b)  "Gross Compensation" – Subject to the specific exclusions set forth in Section (3)(d) above, and the Agreed Expenses Statement to be attached hereto and incorporated herein as Exhibit "C" hereof, said term includes, without limitation, any and all forms of income, payments, consideration, compensation, sums emoluments or any other thing of value, including salaries, advances, fees, royalties, bonuses, gifts (for consideration), shares or receipts, stock and stock options, paid to Artist or applied for Artist's benefit directly or indirectly (i.e., any corporation, partnership, or other entity in which Artist may have interest), regardless of by whom procured, as a result of Artist's activities in and throughout the Entertainment Industry. Notwithstanding the forgoing, Gross Compensation, hereunder, shall not include actual recording

16



cost of Artist's master recordings and audiovisual works produced in connection with Artist's recording services, fees, advances, royalties, and other payments paid to unaffiliated third parties including, without limitation, record producers, remixers, video directors, and on-line providers; recoupable "Independent promotion", tour support" to the extent that any such amount is used to offset a deficit incurred in connection with any personal appearances of concert engagement or tour involving Artist or similar changes to Artist's account with the record company/distributor, and any monies paid by Artist to an opening act or for "sound and lights" in connection with live personal appearances.

13.    **Assignment:**

World may assign this Agreement to any third party or to any of World's affiliates or to any person or entity owning or acquiring a controlling portion of the stock or substantially all assets of World, subject to the mutual prior written consent of Artist and World which (in the case of Artist) shall be conditioned upon a written assumption of this Agreement by the proposed assignee of each and every term hereof and the continuing guaranty of such assignee's performance hereunder; Artist may not delegate the burden of this Agreement but, as provided in Section (6) above, may assign Artist's rights hereunder to any third party firm or corporation ("loan-out entity") authorized to provide his services hereunder so long as such loan out entity is exclusively entitled to provide Artist's services throughout the Term hereof. Artist shall guaranty the authority and performance of such loan-out entity. Any attempted assignment of the burden of this Agreement contrary to the foregoing shall be null and void. This Agreement shall be binding upon Artist and World and shall inure to the benefit of Artist's and World's respective successors and assigns. This Agreement shall also be binding upon any entity which, directly or indirectly, in whole or part, through one or more intermediaries, owned or controls, is owned or controlled by, or is under ownership or control with Artist. Accordingly, Artist on behalf of each such controlled entity hereby accepts this Agreement.



17



14  **Miscellaneous Provisions:**

(a) This Agreement contains all prior or contemporaneous negotiations, representations, warranties, promises and agreements both written and oral and represents the entire understanding of the parties hereto relating to the subject matter hereof, all such matters being merged herein. This Agreement cannot be changed or terminated except by a written instrument signed by both parties. A waiver by either party of any term or condition of this Agreement in any instance shall not be deemed or construed as a waiver of such terms or condition for the future or for any subsequent breach thereof. All remedies, rights, undertakings, obligations, and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party.

(b) In the event of any breach of this Agreement, the non-breaching party shall give the breaching party thirty (30) days written notice thereof and opportunity to cure. If such breach is not reasonably capable of being full cured within such (30) day period, the cure period shall be extended for a reasonable period so long as the party whose breach is alleged commences the substantial cure of such breach within said thirty (30) day period and proceeds with reasonable diligence to complete the curing of such breach.

(c) This Agreement has been entered into in the State of Florida and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of Florida applicable to contracts entered into and performed entirely within the State of Florida. The state courts of Florida shall have exclusive jurisdiction of any controversy regarding this Agreement and venue as to any action or other proceeding arising hereunder shall be solely in Orange County, Florida, and not elsewhere. In the event of any dispute hereunder, the prevailing party shall be entitled to an award of its reasonable attorneys' fees and costs incurred in connection therewith, including appellate and bankruptcy fees and costs, from the non-prevailing party.



18



(d)     This Agreement may be executed in a number of identical counterparts which, taken together, shall constitute collectively one (1) agreement; but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party to be charged.

(e)     Any future waiver, alteration, amendment or modification of any of the provisions of this Agreement shall not be valid or enforceable unless in writing and signed by all parties, it being expressly agreed that this Agreement cannot be modified orally, by course of dealing or by implied agreement. Moreover, any delay by either party in enforcing its rights after an event of default shall not be a release or waiver of the event of default and shall not be relied upon by the other party as a release or waiver of the default.

(f)     The headings of paragraphs in this Agreement are for convenience of reference only and shall not in any way affect the interpretation or construction of this Agreement.

(g)     The warranties and representations of the parties in this Agreement shall survive the termination of this Agreement.

(h)     This Contract shall be translated into Spanish by a certified translator in Mexico and both the English and Spanish translations shall be executed by both parties hereto. However, in the event of any legal action arising herefrom, the parties agree that the English version shall control and be the sole version to be considered by any court.

(i)     The parties agree and acknowledge that Exhibits "A" through "E" hereto are to be prepared subsequent to the execution of this Contract and that the failure to attach said Exhibits at the time of execution hereof shall not in any manner invalidate the effectiveness of this Contract.

19




15.    **Notices:**

All notices, payments or statements to be given by one party to the other hereunder shall be delivered to the respective parties at the addresses and/or facsimile numbers provided above and in the manner set forth herein. All notices to be given by either party hereto shall be in writing and shall be delivered by facsimile/telecopier, certified or registered mail, return receipt request or by a recognized international courier such as Federal Express, UPS, DHL, Airborne ("courier service") changes prepaid. Any properly addressed notice (other than any notice of change of address which shall only be effective upon receipt) which is so mailed, telegraphed, telecopied or cabled shall conclusively deemed to have been given two (2) days after the date of mailing as aforesaid or one (1) day after the date of telecopied facsimile transmission or delivery to the courier service, as the case may be. The addresses of the parties, until further written notice to the contrary, are as follows:

**World:**

c/o John Regna, Chairman
Business Office
8815 Conroy Windermere Road
Orlando, Florida 32385
Fax: (407) 909-9889

**Artist:**

Gloria De Los Angeles Treviño Ruiz

Ciudad de Mexico DF, Mexico

Fax: _____

16.    **Legal Representation:**

ARTIST REPRESENTS THAT HE HAS SOUGHT THE ADVICE OF INDEPENDENT LEGAL COUNSEL CONCERNING HIS RIGHTS AND OBLIGATIONS HEREUNDER, THE PROVISIONS HEREOF, AND THE ADVISABILITY OF EXECUTING THIS AGREEMENT. FURTHER, ARTIST ACKNOWLEDES THAT WORLD HAS ENCOURAGED ARTIST, AND GIVEN ARTIST THE OPPORTUNITY, TO SEEK THE ADVICE OF INDEPENDENT



COUNSEL, AND ARTIST ACKNOWLEDGES THAT HE IS EXECUTING THIS

AGREEMENT VOLUNTARILY AFTER CONSULTATION WITH SUCH INDEPENDENT

COUNSEL, OR AFTER VOLUNTARY WAIVER OF SUCH CONSULTATION.

Signed, sealed and delivered
in the presence of:

**ARTIST:**

Witness:
Name: Ramiro Etreivo Riz

**GLORIA DE LOS ANGELES
TREVIÑO RUIZ**

Witness:
Name: MARIA G HELM

Date Signed: October 28, 2004, Effective as of October 25, 2004

**WORLD:**

**WORLD ENTERTAINMENT
ASSOCIATES OF AMERICA, INC.,**
a New Jersey corporation

Witness:
Name: ALEXANDER KHTIS

By:
John Regan, Chairman

Witness:
Name: JOYCE MAKINAJIAN

Date Signed: October 27th, 2004, Effective as of October 25, 2004

**STATE OF TEXAS          )**

**                        )**

**COUNTY OF               )**

The foregoing instrument was acknowledged before me this 28 day of October, 2004,
Gloria De Los Angeles Treviño Ruiz, who  (Notary must check applicable box)

X   is personally known to me.

___   produced a current _____ driver's license as identification.

___   produced _____ as identification.

(Notary seal must be affixed)

Notary Public (signature)

ROBERT J. LERMA

Notary Public (name typed/printed)

**(ACKNOWLEDGEMENTS CONTINUE ON FOLLOWING PAGE)**

21

STATE OF FLORIDA          )
                          )
COUNTY OF ORANGE          )

The foregoing instrument was acknowledged before me this ⟨27⟩ day of October, 2004, by John Regua as Chairman of World Entertainment Associates of America, Inc., a New Jersey corporation , on behalf of the corporation, who  (Notary must check applicable box)

    ___  is personally known to me.
    _√_  produced a current ⟨Florida⟩ driver's license as identification.
    ___  produced _____ as identification.

(Notary Seal must be affixed)

My Commission Expires: ⟨Nov. 2, 200⟩    ⟨Millyana Montesinos⟩
                       Notary Public (signature)
                       ⟨Milliana Montesinos⟩
                       Notary Public (name typed/printed)

Millyana Montesinos
Commission #DD263849
Expires: Nov 02, 2007
Bonded Thru
Atlantic Bonding Co., Inc.

22

N-05-066

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

## I. (a)   PLAINTIFFS

Trevino-Ruiz, Gloria de los Angeles

**DEFENDANTS**

World Entertainment Associates of America, Inc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Orange County, Florida
(IN U S PLAINTIFF CASES ONLY)

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Oscar R. Alvarez, Law Office of Ramon Garcia, P.C.,
222 W. University Drive, Edinburg, TX 78539; (956) 383-7441

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1   U S Government Plaintiff
- ☐ 2   U S Government Defendant
- ☐ 3   Federal Question (U.S. Government Not a Party)
- ☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U S Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
28 U.S.C. Sec. 1332(a)(2); F.R.C.P. 57 and 28 U.S.C. Sec. 2201, 2202
Brief description of cause:
Declaration Judgment on a Representation Agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____